*36 The opinion of the Court was delivered by
JOHNSTON, Ch.
This Court, being entirely satisfied with the view which the Chancellor has taken, as regards the possession of the slave Tener and her children by Wiley Glover, and the operation of his will upon her, as his property: — deems it necessary to notice only two points made in the argument of the appeal here:
1. Was that slave given by the will of this testator, in the first instance, to his wife absolutely; or only for life ?
2. If for life only, did the residuary clause of the will attach upon the reversion; or did it remain intestate ?
1. No case has been pointed out at all obliging the Court to put a construction upon the words of the will, contrary to their plain and manifest meaning. Nothing can be plainer than that the testator intended, as he says in his will, to loan to his wife the use of this property, during her natural life.
The case of Moon vs. Moon, (a) even if it apply almost in terms to tins case, is no authority for a construction against the plain intent of. the will. That case was ruled upon the construction of the particular will before the Court, — and the decision was made with a view to promote, and not to contradict, the real intention.
There is a difference between the phraseology of that will and this: — and where the difference of phraseology points to a different intention in the two cases, principle,- — (the same principle which governed the construction in that case,) — compels us to come to a •different result in this.
The two cases agree in this: that the testators both intended to dispose of their whole estates: that after a disposition of realty and personalty in the same clause, which certainly as to one class of property was intended to be only for life, and as to the other was equivocal, the testators take up a portion of the property and make it the subject of further disposition, — but totally neglect the other.
So far the two cases agree. But they differ in other respects.
*37 In Moon vs. Moon, the words of the will, (supplying necessary words,) are these: “ I give my wife, N. T. M., tbe tract of land whereon I live, containing 200 acres, more or less; also ” (I give her) “ two negroes, to wit, my man Stephen and my girl Harriet, during Tier natural life, or widowhood,” &c.
In this ease, the will is, “ I lend.to my loving wife, J. G-., during her natural life, the use of one half my land,” (describing it,) “ and fire negroes,” (naming them).
Is it not palpable that the words, “ during her natural life,” are, in the latter case, connected immediately with the words of disposition, so as to qualify them, before th^are applied by the testator to the subjects disposed of. NUli'e ¿fleet'isP^at whatever subjects are touched by the disposi^oñl;%'^ff^íiféd %■ the qualification attached by the testator to the Words of dispositio¿|themselves.
.The words of this clause of MM^flLi^llilidlf'^he same meaning as if he had said, “ I am going to ^goipt out property which I intend for my wife, but^ÍMeSL'(fe|i»I'feÍ3.'íf to her, for her use diming her life: and upon thes^'¥er&&*fiij,iwill is that she have the land and five negroes.”
The phraseology of Moon was different. He imposes no restriction upon the words of disposition in themselves, but uses them in their natural sense. Applied in their natural sense, they gave his wife a fee in his land; and so would they have given her the negroes absolutely, if he had not, in immediate proximity with that disposition, imposed a restriction upon the gift, as made by the words of disposition.
In that case, a full and unqualified disposition was made, applicable to both land and negroes, — and then a restriction is imposed upon that disposition, so far as related to the negroes.
In this case, nothing but a qualified disposition proceeds from the mouth of the testator, equally affecting all the property to which he applies it. If our language afforded a verb signifying, “ I lend for life,’\we should have this testator’s meaning if we inserted that single word instead of the words of disposition employed by him.
*38 I think, too, as I have intimated in the decree, that the word “lend,” used in such a connection as this, is evidence of an intention to make a limited disposition. Take the words, “ lend,” “use,” “for life they all harmonize in shewing that there was no intention, — there could be none, — to give the property absolutely and forever. In Ward vs. Waller, (a) it is said: “ the term me might sometimes afford argument for an intention to give only a life estate :” — and I think when it is connected with the word “lend” and the words “during her life” — all standing in one group — it is difficult to conjecture any other intention.
2. Being satisfied that these slaves are only given for life, I am, also, of opinion, that the residuary clause of the will does not embrace them; and therefore they are intestate property after the efflux of the life estate.
I can add very little to what I have said in the decree upon that subject.
The direction, then, is to sell, at the testator’s death, all the property to which the special residuary clause was intended to apply. The very fact that the interest now under consideration was of necessity, at that time, a reversionary interest, upon which no act of administration could be performed until the prior life estate expired and the reversion accrued, — of itself forbids the idea that it was intended to be parcel of the property then directed to be subjected to an act of administration.
It is ordered, that the decree be affirmed, and the appeal dismissed.
DarsaN and DüNKIN, CC. concurred.
Wakdiaw, Ch. having been of counsel in the cause, gave no opinion.

Decree affirmed.

 2 Strob. Eq. 333.

 2 Sp. 793.